IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AQUIL JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEVEN R. GLUNT, et al. | : | NO.  14-2317 |

### REPORT AND RECOMMENDATION

ELIZABETH T. HEY, M.J.                                                October 1, 2014

      This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by an individual currently incarcerated at the State Correctional Institution - Rockview at Bellefonte, Pennsylvania.  For the reasons that follow, I recommend that the petition be dismissed without prejudice as unexhausted.

### I.    PROCEDURAL HISTORY[1]

      On August 5, 2010, after a trial before the Honorable Sandy L.V. Byrd, a jury convicted Johnson of aggravated assault and possession of an instrument of crime ("PIC").  N.T. 8/5/11 at 78.  The charges arose from the shooting of Kamal Murray on the night of May 13, 2008, in the 5900 block of Turner Street in West Philadelphia.  N.T. 8/3/11 at 87-88, 146-47.  Judge Byrd sentenced Johnson to a term of 12½ -to- 25 years' imprisonment (10 -to- 20 years for aggravated assault and a consecutive term of 2½ -to- 5

---

[1] Because Petitioner's case remains in the Court of Common Pleas of Philadelphia County, I was unable to obtain his state court record.  The procedural history is taken from his petition and various submissions, the response, and the state court docket sheets.  The court appreciates Mr. Johnson supplying a copy of the notes of testimony of the preliminary hearing, trial, and sentencing (attached to Doc. 12).

years for PIC).  N.T. 9/1710 at 15-16; Commonwealth v. Johnson, CP-51-CR-0005617-2009, Criminal Docket (Phila. C.C.P.).[2]

Johnson filed a timely notice of appeal and statement of matters complained of on appeal.[3]  The Superior Court quoted Johnson's arguments as follows:

1. Did the lower court error [sic] by[] admitting [sic] the prosecutor and Detective Murray to read into evidence the victim's prior inconsistent statement, to be used as substantive evidence, where, the testimony and evidence showed the statement was not signed and adopted by the victim?

2. Did the lower court error [sic] by[] admitting [sic] Officer Bonner to read Officer Ayers['] incident report into evidence, to be used as substantive or impeachment evidence, where there was no evidence indicating the amount of time elapsed between perceiving the event and the making of the statement and where the victim never adopted the summary in the report as his own statement, thus, did the statement qualify as a present sense impression?

3. Did the Commonwealth have sufficient evidence to prove beyond a reasonable doubt that Appellant was the person who committed the crime, i.e., circumstantial evidence strong enough to avoid speculation and conjecture?

---

[2]Prior to trial, Johnson filed a habeas petition in this court, claiming that his rights to a speedy trial under Pennsylvania and federal law had been violated.  See Johnson v. Lawton, Civil Action 10-2102.  On August 25, 2010, relying on a Report and Recommendation I prepared, the Honorable Mary McLaughlin dismissed the petition because Johnson's federal claim was unexhausted.  See Docs. 10 & 12, Civil Action 10-2102.

[3]While his direct appeal was pending, Johnson filed a petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-9551.  See Commonwealth v. Johnson, CP-51-CR-0005617-2009, Docket Sheet (Phila. C.C.P.), ("Docket Sheet").  On July 8, 2011, Judge Byrd dismissed the PCRA petition due to the pending appeal in Superior Court.  Id. at 13.  After holding a Grazier hearing, she found that Johnson had knowingly and intelligently waived his right to counsel, permitted him to proceed pro se on appeal, and ordered him to file a new statement of matters complained of on appeal.  Id.

  4.  Did the lower court error [sic] in regards to the above questions as to amount to a deprivation of the Appellant's Fifth Amendment Right to due process, and his Sixth Amendment right to a fair trial, both rights which are incorporated in Pennsylvania by and through Artic[le] I Section 9 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution?

Commonwealth v. Johnson, No. 2664 EDA 2010, at 4-5 (Pa. Super. Jul. 27, 2012) (attached to Resp. at Exh. B).  On July 27, 2012, the Superior Court affirmed the judgment of sentence.  Id. at 5-9.  Johnson did not seek review in the Pennsylvania Supreme Court.

  On May 13, 2013, Johnson filed a PCRA petition claiming:

1.  Counsel was ineffective for failing to object to the admission of Officer Ayers' police report when he did not testify in court and Petitioner did not have the opportunity to confront Officer Ayers.

2.  Counsel was ineffective for failing to object to Officer Bonner's testimony regarding prior inconsistent statements made by the victim, and for failing to request a cautionary instruction or impeach Officer Bonner.

3.  Counsel was ineffective for failing to object to the jury instruction regarding consideration of Officers Ayers' and Bonner's testimony.

4.  Counsel was ineffective for failing to investigate and call exculpatory witnesses at trial and failing to prepare for trial.

5.  Counsel was ineffective for failing to object to the prosecutor's closing argument.

6.  The trial court imposed an illegal sentence.

Commonwealth v. Johnson, No. CP-51-CR-0005617-2009, Post Conviction Relief Act Petition (Phila. C.C.P. filed May 13, 2013) (attached to Resp. at Exh. C).

3

At this point, that petition remains pending at the trial court level. According to the docket sheet, Johnson filed an amended PCRA petition on November 13, 2013, counsel was appointed to represent Johnson on December 31, 2013, and a hearing notice was issued on June 25, 2014.[4]

On April 16, 2014,[5] Johnson filed this petition for habeas corpus. In the petition and attached memorandum of law, Johnson reiterates many of the claims presented in his PCRA petition: (1) counsel failed to call exculpatory witnesses, (2) counsel was ineffective and the court erred in permitting the admission of Officer Ayers' report, (3) the court erred in failing to instruct the jury on misidentification, (4) the court erred in instructing the jury regarding its consideration of Officer Ayers' report and Officer Bonner's testimony, (5) counsel failed to object or ask for a cautionary instruction regarding the victim's prior inconsistent statement, (6) counsel was ineffective for failing to object to the prosecutor's closing argument, and (7) Petitioner was denied due process where the prosecutor failed to prove all of the elements of the crimes charged. See Doc. 1. In addition, Johnson argues that his conviction amounts to a miscarriage of justice because he is actually innocent. The District Attorney has filed a response, arguing that

---

[4]The District Attorney states that the PCRA court held a hearing on June 25, 2014. Doc. 6 at 4. Johnson disputes that a hearing took place. Doc. 11 at 2. The docket entry for June 25, 2014, merely states that a hearing notice was filed, suggesting that the hearing has not yet taken place.

[5]Although Johnson's habeas petition was filed on April 21, 2014, the federal courts employ the prisoner mailbox rule providing that a petition is deemed filed when given to prison authorities for mailing. See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). In this case, the petition is dated April 16, 2014, and I will assume that he provided it to prison authorities on that date.

4

the petition should be dismissed because Johnson's claims are unexhausted and currently pending in the state court. See Doc. 6. Johnson filed a reply arguing that his claims are not subject to exhaustion because he is being subjected to a fundamentally unjust incarceration. See Doc. 11 at 3-5.[6]

## II.   DISCUSSION[7]

Absent unusual circumstances, the federal courts will not consider the merits of a habeas corpus petition unless the petitioner has complied with the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires that the petitioner give the state courts an opportunity to review his allegations of error before seeking relief in the federal court. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995)). Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"),

> [a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

---

[6]I previously granted Johnson's Application for Leave to File Expansion of the Record or Submission of Exhibits, by which Johnson provided the transcripts of his state-court proceedings. See Docs. 12 & 13.

[7]There is no question that Johnson's habeas petition is timely filed. His conviction became final on August 27, 2012, when the time for filing a petition for allowance of appeal with the Pennsylvania Supreme Court in his direct appeal expired. See Pa. R.A.P. 1113(a) (allowing 30 days for allocator petition). He filed a PCRA petition 259 days later on May 13, 2013, tolling the habeas statute of limitations. See 28 U.S.C. § 2244(d)(2) (time during which a properly filed PCRA petition pending is tolled). That petition remains pending at this time. Thus, the habeas petition he filed on April 16, 2014, is timely filed.

Here, Johnson is in the process of exhausting his claims in the state court, with a PCRA petition pending. Although the federal court may excuse the exhaustion requirement if there has been an inordinate delay in the state court proceedings, see Story v. Kindt, 26 F.3d 402, 403 (3d Cir. 1994) (nine year delay in state postconviction proceeding inordinate), Johnson has not suffered any such sort of delay. Johnson filed his PCRA petition less than 18 months ago. He filed an amended petition and was appointed counsel within the last year. Moreover, the most recent docket entry was approximately three months ago, and indicates that his case is being listed for a hearing. Thus, there is no basis to excuse the exhaustion requirement. See Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir. 1995) (federal court to "stay its hand" if there is reliable evidence that the state proceedings have been reactivated even after a lengthy delay).

In his memorandum and reply to the response, Johnson contends that his claimed innocence trumps the exhaustion requirement. "[T]he comity interest that drive[s] the exhaustion doctrine and exhaustion itself must yield to the imperative of correcting a fundamentally unjust incarceration." Doc. 11 at 3 (citing Schlup v. Delo, 115 S. Ct. 851 (1995)). Johnson's argument confuses two difficult concepts, exhaustion and procedural default.

The Supreme Court has explained that exhaustion is grounded in comity. "[T]he States should have the first opportunity to address and correct violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 730 (1991); see also O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates

federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (internal quotation marks and citations omitted).

When a petitioner has failed to properly present his claims to the state court and now finds that he is unable to do so, the exhaustion requirement is waived, but the claims are considered procedurally defaulted in the federal court.

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer available to him.

Coleman, 501 U.S. at 731. When a claim is procedurally defaulted, the federal court may only consider the merits of the claim if the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." Werts v. Vaughn, 228 F.3d

7

178, 192 (3d Cir. 2000) (quoting McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)); see also Coleman, 501 U.S. at 731.

The line of cases upon which Johnson relies addresses procedurally default, specifically exceptions to the procedural default rule that allow the federal court to address the merits of a claim when the petitioner has failed to properly present the claim to the state courts and now has no opportunity to do so. See House v. Bell, 547 U.S. 518 (2006) (petitioner succeeded in showing actual innocence sufficient to allow consideration of defaulted claims), Murray v. Carrier, 477 U.S. 478 (1986) (cause and prejudice or actual innocence can excuse default, but neither met), Houck v. Stickman, 625 F.3d 88 (3d Cir. 2010) (noting that actual innocence could excuse the procedural default of claims, but finding the standard not met). The Supreme Court has also applied the procedural default exceptions to allow successive habeas petitions. See Schlup v. Delo, 513 U.S. 298 (1995) (remanding for further consideration of innocence exception to allow successive petition); McCleskey v. Zant, 499 U.S. 467 (1991) (procedural default exceptions apply to permit successive petition, but standard not met). Most recently, the Supreme Court has adopted the actual innocence exception to the default rules as a basis to overcome the habeas statute of limitations. McQuiggin v. Perkins, ___ U.S. ___, 133 S. Ct. 1924 (May 28, 2013).

The cases cited by Johnson do not excuse the exhaustion requirement itself. In other words, the cause and prejudice or actual innocence exceptions to the procedural default rule are not applicable to the exhaustion requirement. In fact, if the court were to adopt Johnson's approach, the exhaustion requirement would be eviscerated, allowing the

federal court to preempt ongoing state court proceedings. The Supreme Court has been clear that the state courts are to be given the "the first opportunity to review a claim, and to correct any constitutional violation in the first instance." Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1401 (2011). Johnson is doing just that by pursuing his claims in his PCRA petition. If Johnson's PCRA petition is denied, he will have to present the claims to the Superior Court in order to satisfy the exhaustion requirement. See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004) (Pennsylvania petitioner must seek review of claims in Superior Court to exhaust but need not seek review in Pennsylvania Supreme Court). Once the claims are exhausted, Johnson is free to return to the federal court.

Finally, the unexhausted nature of Johnson's claims raises the question whether the federal court should exercise its discretion to stay consideration of the habeas petition pending exhaustion of state court remedies. In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court recognized that the exhaustion requirement can conflict with the one-year statute of limitations enacted by AEDPA. In Rhines, the Supreme Court specifically considered this conflict when faced with a mixed petition, on containing both exhausted and unexhausted claims. The court observed that,

> [a]s a result of the interplay between AEDPA's 1-year statute of limitations and [Rose v.] Lundy's dismissal requirement [455 U.S. 509 (1982)] petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims.

Id. at 275. In such cases, if the petitioner can show good cause for failing to exhaust and that his unexhausted claims have potential merit, the Court approved the use of a "stay

9

and abey" procedure. By staying the federal petition rather than dismissing it, the federal court allows the petitioner to complete the state procedures necessary to comply with AEDPA's exhaustion requirement without the need to re-file at a point in time that might be outside the statute of limitations. This procedure protects the concerns of both comity and finality by giving the state courts the first opportunity to address the unexhausted claims and preserving the petitioner's exhausted claims from an untimely fate if the court were to dismiss a mixed petition. Id. at 278. Whether to stay a petition under Rhines is discretionary with the district court, guided by the timeliness concerns at issue. Id. at 277-78.

The Third Circuit has held that Rhines is not limited to mixed petitions, but is equally applicable in cases presenting only unexhausted claims. Heleva v. Brooks, 581 F.3d 187 (3d Cir. 2009). Like the Court in Rhines, the Third Circuit expressed concern that the petitioner would not have time to pursue a habeas petition once the state court concluded its review of the petitioner's claims, but left such a determination to the district court. Id. at 192 & n.3.

The concern that a subsequent habeas petition would be untimely in the federal court is not present in this case. As previously noted, the habeas limitations period is currently tolled during the pendency of Johnson's PCRA petition and will remain tolled during any timely filed appeal. When that collateral appeal concludes, Johnson will have 106 days to file his habeas petition. See supra at 5 n.7. Because there does not seem to be any fear that failing to stay Petitioner's federal petition will result in the running of the

habeas limitations period, placing the case in abeyance is not warranted under the reasoning of either Rhines or Heleva.

Finally, Johnson has filed several motions in this court; motion for appointment of counsel (Doc. 7), motion for financial assistance for litigation support services (Doc. 8), motion for an evidentiary hearing (Doc. 9), and motion to conditionally transmit the state court record (Doc. 10). Considering my recommendation and the pending state proceedings, I will recommend that each of these motions be denied

## IV. CONCLUSION

For the foregoing reasons, I recommend that Johnson's petition be dismissed without prejudice, and that his pending motions be denied.

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this 1st day of October 2014, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be dismissed without prejudice to Petitioner's ability to seek habeas relief once he has exhausted his state court remedies. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. IT IS FURTHER RECOMMENDED that Petitioner's motions for appointment of counsel (Doc. 7), for financial assistance for litigation support services (Doc. 8), for an evidentiary hearing (Doc. 9), and to conditionally transmit the state court record (Doc. 10), be denied.

The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ELIZABETH T. HEY
_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE